
# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
10 Grand Central
155 East 44th Street – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102

December 28, 2020

**BY ECF**

Hon. Katherine H. Parker, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

     **Re:** ***Dominguez v. Amsterdam Gourmet Foods, Inc., et al.***
       <u>**Case No. 20-CV-5305 (KHP)**</u>

Dear Judge Parker,

  We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with defendants' counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously with this letter, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

## I. *The Need for the Court's Approval of the Agreement*

  As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Katherine H. Parker, U.S.M.J.
December 28, 2020
Page 2

## II.    The Parties

### a.    *Defendants*

Defendants own and operated a gourmet market and delicatessen in Manhattan, doing business as Amsterdam Gourmet (the "Market"). The Market has ceased operations in June of 2020 and surrendered its lease.

### b.    *Plaintiff*

Plaintiff alleges that he was hired in or about 1999 to work as a sandwich maker and cashier at the Market. Plaintiff worked continuously for the defendants in those capacities until on or about March 26, 2020.

Plaintiff alleges that during the relevant six (6) year limitations period beginning in July 2014, he typically worked fifty-eight (58) hours per week, and was paid on a salary basis between $590 and $630 per week. Thus, Plaintiff alleges that the Defendants failed to pay him overtime compensation at the rate of time and one-half his regular rate for all hours worked in excess of forty (40) each week.

## III.   Defendants' Defenses/Positions

Defendants raise various defenses. First, Defendants deny the substantive factual allegations, arguing that Plaintiff was a manager, and therefore is not entitled to overtime compensation. Second, Defendants deny that Plaintiff worked fifty-eight (58) hours per week, and that all hours worked were paid. Throughout discovery, Defendants have maintained an inability to pay and that the Market closed due to financial loss.

## IV.    Plaintiff's Calculated Damages

Plaintiff calculated that he is owed approximately $121,000 in unpaid compensation, with an equal amount in liquidated damages. Together with statutory damages for the defendants' alleged failure to provide wage notices and statements, the total value of plaintiff's claims amount to slightly more than $250,000.

Defendants calculate plaintiff's maximum recovery to be $10,000 for failure to provide adequate wage notices and statements under New York's Wage Theft Prevention Act.

## V.     Settlement Amount

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $15,000 to resolve all of plaintiff's wage and hour claims against the defendants, payable in full within ten (10) days after the Court approves the Agreement and dismissed the action with prejudice.

Hon. Katherine H. Parker, U.S.M.J.
December 28, 2020
Page 3

### VI.    The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiff's claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra,* 679 F.2d at 1354)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Apr. 13, 2013).

Moreover, one concern tending toward settlement is plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. *See Cabrera v. Roselea Int's Services*, No. 10 Civ. 241, 2011 U.S. Dist. LEXIS 152268, at *12 (M.D. Fla. Dec. 30, 2011) (compromised settlement deemed reasonable in light of plaintiff's legitimate collectability concerns). There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operate a small neighborhood delicatessen, which is no longer operating. The business was struggling financially even well before the pandemic. Forcing the defendants into protracted litigation and/or obtaining a larger judgment after trial runs the real risk of the defendants filing for bankruptcy protection or simply defaulting on payment.

In light of the various disputes discussed above, this settlement should be approved. By settling now, plaintiff at least receives some portion of his calculated unpaid wages, while enabling the parties to avoid the risks inherent in any trial.

### VII.    Application for Attorneys' Fees

Pursuant to this firm's retainer agreement with plaintiff, our firm will retain one-third the net proceeds of the settlement after the firm's costs (filing fee and service). Therefore, plaintiff's counsel seeks $5,439.52 in fees and costs, which is below the firm's lodestar.

Hon. Katherine H. Parker, U.S.M.J.
December 28, 2020
Page 4

      Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

      While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of gross settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

      For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

      We thank the Court for its continued attention to this matter.

                                                         Respectfully submitted,

                                                         Justin Cilenti

cc: D. Mara Lowenstein, Esq. (by ECF)